UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

SHABBIR CHOUDHURY,

        Plaintiff,

        -against-

TRANSWORLD SYSTEMS INC.,

        Defendant,

_____/

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF PURSUANT TO 47 U.S.C. § 227 *ET SEQ*. (TELEPHONE CONSUMER PROTECTION ACT)**

**Docket No**.: 17cv2937
Jury Trial Demanded

## PARTIES IN THE COMPLAINT

Shabbir Choudhury (know hereinafter as "Plaintiff") by and through his attorney Subhan Tariq, Esq. as and for his complaint against Transworld Systems Inc. (known hereinafter as "Defendant") respectfully sets forth and alleges the following on information and belief, the following:

1.  Plaintiff Shabbir Choudhury (hereinafter "Plaintiff") is a natural person who resides at 88-28 202nd Street, Hollis, NY 11423.

2.  Plaintiff is a "person" as defined by the TCPA, 47 U.S.C. § 153(39), and a subscriber to cellular telephone services within the United States.

3.  Defendant Transworld Systems Inc. is a financial services company headquartered in California, with a primary mailing address at 2235 Mercury Way, Suite 275, Santa Rosa, CA 95407-5413.

1

4.      Defendant persistently utilized an "Automatic Telephone Dialer", as defined in 47 U.S.C.

§ 227(a)(1), to call the Plaintiff's cellular telephone, violating the Plaintiff's privacy rights

afforded under federal law.

## JURISDICTION

5.      Jurisdiction of this Court arises under 28 U.S.C. § 1331, 47 U.S.C. § 227, and pursuant to 28

U.S.C. § 1367 for pendent state law claims, which are predicated upon the same facts and

circumstances that give rise to the federal causes of action.  Injunctive relief is available

pursuant to the TCPA.

6.      This action arises out of the Defendant's repeated violations of the Telephone Consumer

Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.,* in their efforts to collect an alleged

consumer debt.

7.      Venue is proper in this District because the Plaintiff may be found in this District, and some

of the acts and transactions occurred in this District, and because Plaintiff received multiple

collection communications from and on behalf of the Defendant while in New York on the

cellular telephone that is the subject of this litigation.

## FACTUAL ALLEGATIONS

8.      Plaintiff repeats, reiterates, and incorporates the allegations contained in the paragraphs

number ("1 through 7") herein with the same force and effect as if the same were set forth

at length herein.

9.      Immediately preceding the filing of this claim purposes and for several months prior to,

the Defendant attempted to collect from Plaintiff a financial obligation which was for

family or household purposes and is therefore a "debt" as that term is defined by 15 U.S.C.

2

§ 1692a(5), namely, a defaulted bill from, Defendant through a campaign of communication which included repeated autodialed calls to the Plaintiff's cell phone.

10.    Plaintiff asked that he not be called by automated dialers, but these calls did not cease.

11.    On March 13, 2017, Defendant began communicating with Plaintiff by means of telephone calls to Plaintiff's cellphone number (347) 907-5841.

12.    Plaintiff, after having received numerous calls from the Defendant, spoke with an agent of the Defendant and requested that the Defendant cease making "robo-calls" to his cellphone number (347) 907-5841.

13.    On March 13, 2017, the Plaintiff spoke with the Defendant's agent.

14.    Defendant's agent stated: "It shows here, that your business have a balance of $158.45. How would you like to resolve this account?"

15.    Plaintiff stated: "I already closed this business. And right now I can't really take care of it because I don't have enough cash, but I'll take care of it later on. But you guys just calling me with robocalls, man. I just picked up the phone and say, 'Hello, hello, hello.' Nobody's picking up. Can you stop calling me with the robo-calls?"

16.    Defendant's agent stated: "Ok. Can I ask when do you…do you have any expecting money by this month or by next month? So, we can update City Merchant Services, that you have a good intention of resolving this account, and we can stop the collection effort for you."

17.    Plaintiff stated: "Maybe like…I don't know. I can't really give you an exact time, but I'll take care of it."

18.    Defendant's agent stated: "Actually, the reason why I'm asking those questions is to hold the collection efforts for you. You won't receive any calls from our company after we have an agreement or promise that you're going to resolve this account."

3

19.     Plaintiff stated: "I cannot really tell you an exact time, but I'll take care of it. Don't worry."

20.     Defendant's agent stated: "By the way Shabbir, the number that you're using right now, I believe this is your cell phone number, correct?"

21.     Plaintiff stated: "Yes."

22.     Defendant's agent stated: "For future contacts, may we call you on your cellphone?"

23.     Plaintiff stated: "Not with the robo-calls, but regular calls, yes."

24.     The call ended shortly after.

25.     Despite these requests on the part of the Plaintiff, the Defendant continued to make harassing autodialed calls to his cell phone at all hours of the day causing great stress and hardship to the Plaintiff and his family.

26.     After this phone call on March 13, 2017, the Defendant called the Plaintiff twenty-eight (28) more times at her cellphone number (347) 907-5841.

27.     On March 13, 2017, the Plaintiff answered the Defendant's phone call.

28.     Plaintiff stated "Hello?" three times and no one answered.

29.     On March 15, 2017, the Plaintiff answered the Defendant's phone call.

30.     Plaintiff stated "Hello?" five times and no one answered.

31.     Once again on March 15, 2017, the Plaintiff answered the Defendant's phone call.

32.     Plaintiff stated "Hello?" five times and no one answered.

33.     On March 17, 2017, the Plaintiff answered the Defendant's phone call.

34.     Plaintiff stated "Hello?" six times and no one answered.

35.     On April 7, 2017, the Plaintiff answered the Defendant's phone call.

36.     Plaintiff stated "Hello? Please stop calling me with these robo-calls. Oh, my God! Hello?" and no one answered.

37.    On April 18, 2017, the Plaintiff answered the Defendant's phone call.

38.    Plaintiff stated "Hello? Oh, my God." and no one answered

39.    On May 9, 2017, the Plaintiff once again spoke with the Defendant's agent.

40.    Plaintiff stated: "Yes, I already spoke to you guys last time. One time you guys called me, I answered the phone, and no one talks. Then I call you guys back and I told you guys that I was having some financial problems. And I also told you guys to stop calling me with robocalls because I was getting a lot of robocalls. Even, it would be nice, if I pick up the phone and tell you to stop with the robocalls [can't understand what was said]. But I'll pick up the phone to say 'Hello, hello?" and nobody would answer my call."

41.    Defendant's agent stated: "Sir? I apologize for the inconvenience. Let me just give you the information. We're calling you about your account from CP Bank Collection Services. This is provided by First Data Merchant. The balance, looking at here, it's for $8.51. This is under First Data Merchant Services."

42.    Plaintiff stated: "I understand. I'm having some financial problem. I'll take care of it as soon as I get something back on track, but please stop calling me these robocalls. It's horrible."

43.    Defendant's agent stated: "Sir? I apologize for the inconvenience. Let me just give you the information. We're calling you about your account from CP Bank Collection Services. This is provided by First Data Merchant. The balance, looking at here, it's for $8.51. This is under First Data Merchant Services."

44.    Plaintiff stated: "I understand. I'm having some financial problem. I'll take care of it as soon as I get something back on track, but please stop calling me these robocalls. It's horrible."

45.     Defendant's agent stated: "Sir, it's just for $8.51 that we need to take care of. Actually, the total amount you have with…$158.85. But since our client already made an adjustment on the account the only remaining balance that you need to take care of, to close the account, is $8.51."

46.     Plaintiff stated: "$8.51?"

47.     Defendant's agent stated: "Correct."

48.     Plaintiff stated: "Okay, no problem. You know what? I'll just pay it right now. But please stop calling me with these robocalls because it's not really…it's really bad. I pick up the phone and I'm saying, 'Hello, hello, hello' but then why call me if nobody is there to talk."

49.     Defendant's agent stated: "I understand that, sir. As soon as we take care of this balance collection calls and collection efforts will be held…everything on the account will stop. We will stop calling you once the payment is already made on the account. So, let's go ahead and let's set up the payments so we can remove the account out of collections. So, we can stop the collection calls and efforts."

50.     Plaintiff stated: "Okay, cool. But right now, I'm not actually…I don't have a card with me. So, I'm going to have to give you guys a call back. I just looked in my wallet."

51.     Defendant's agent stated: "Sorry?"

52.     Plaintiff stated: "I said right now I don't have my card with me. So, I'll give you guys a call back and make the payment."

53.     Defendant's agent stated: "So, when can you give us a call back then?"

54.     Plaintiff stated: "I'll give you guys a call back tomorrow or so."

55.     Defendant's agent stated "How about later on today?"

56.     Plaintiff stated: "Yeah, I'll try."

57.     Defendant's agent stated "How about later on today?"

58.     Plaintiff stated: "Yeah, I'll give you guys a call later, I guess."

59.     Defendant's agent stated: "I'll go ahead and have that properly noted to you. Give us a call back, tomorrow, to give us the information. Alright? I'll go ahead and have it properly noted here. And I hope we have…can take care of this since the amount is already lowered down the account for it to be able to resolve this. Ok? So, we can stop the collection calls and efforts in your account and we can remove this account out of collections. I'm expecting that you can give us a call tomorrow, May 9, sorry May 10, 2017 and we will be taking care of the $8.51 using your card. Right?"

60.     Plaintiff stated: "Yes."

61.     Defendant's agent stated: "Ok. Let me just update some information. The number that we call you at is our cell phone number, right?"

62.     Plaintiff stated: "Yes, of course."

63.     Defendant's agent stated: "I understand. So, for future contact you're giving us permission to call you on your cell phone, right?"

64.     Plaintiff stated: "No, I don't. Please don't call me on my cell phone."

65.     Defendant's agent stated: "This is just for an update on your account, so we can have this taken care of."

66.     Plaintiff stated: "I understand but I don't like to get any phone calls from you guys because I'm getting these robocalls is horrible. For the past one and half month or two months I'm receiving these calls to the phone. It's very annoying. I pick up, nobody say nothing."

67.     Defendant's agent stated: "We'll just have that, here, properly noted that for now collection calls and efforts will be continued in the account. Thank you, sir, and have a good one."

68.     Plaintiff stated: "Collection calls will be continued on the account?"

69.     Defendant's agent stated: "Sorry?"

70.     Plaintiff stated: "What did you say? Collection call will continue on the account?"

71.     Defendant's agent stated: "Sorry. I cannot understand you, sir."

72.     Plaintiff stated: "You just said that collection calls will continue on the account? Or it will discontinue on the account?"

73.     Defendant's agent stated: "Collection efforts will continue on your account since we don't have any set up arrangement."

74.     Plaintiff stated: "Ok, no problem. Thank you, ma'am."

75.     The call ended shortly after.

76.     Despite Plaintiff revoking consent, the Defendant and its agents continued to repeatedly use an automatic telephone dialing system to call Plaintiff's cellphone in an attempt to collect this alleged debt, at least twenty-nine (29) times prior to the commencement of this litigation (See Exhibit A Call Logs).

77.     When the Plaintiff was able to speak with an agent of the Defendant, they would routinely refuse to acknowledge the Plaintiff's request to not receive "robo-calls."

78.     The Defendant voluntarily and willfully used an auto dialer to place these calls.

79.     At no time did the Plaintiff ever give consent for the Defendant to use an auto dialer to place these calls.

### TELEPHONE CONSUMER PROTECTION ACT

80.     Plaintiff repeats, reiterates, and incorporates the allegations contained in the paragraphs number ("1 through 79") herein with the same force and effect as if the same were set forth at length herein.

81.   In 1991, Congress enacted the TCPA, in response to a growing number of consumer complaints regarding certain telemarketing practices.

82.   The TCPA regulates, among other things, the use of automated telephone equipment, or "autodialers." Specifically, the plain language of section 227(b)(1)(A)(iii) prohibits the use of autodialers to make any call to a wireless number in the absence of an emergency or the prior express consent of the called party.

83.   Under the TCPA, the burden is on defendants to demonstrate prior express consent.

84.   At all times relevant to this complaint, the Plaintiff was and is a "person" as defined by the TCPA, 47 U.S.C. § 153(39), and a subscriber to cellular telephone services within the United States.

85.   At all times relevant to this complaint, the Defendants have used, controlled, and/or operated "automatic telephone dialing systems" as defined by the TCPA 47 U.S.C. § 227(a)(1) and 47 C.F.R. 64.1200(f)(1).

86.   The Federal Communications Commission (FCC) was given the authority to issue orders implementing the TCPA. The FCC has issued an order that states:

> The creditors are in the best position to have records kept in the usual course of business showing such consent, such as purchase agreements, sales slips, and credit applications. Should a question arise as to whether express consent was provided, the burden will be on the creditor to show it obtained the necessary prior express consent. Similarly, a creditor on whose behalf an autodialed or prerecorded message call is made to a wireless number bears the responsibility for any violation of the Commission's rules. **Calls placed by a third party collector on behalf of that creditor are treated as if the creditor itself placed the call.**

*In re Rules Implementing the Tel. Consumer Prot. Act of 1991*, 23 FCC Rcd 559, 565 (F.C.C. 2007), paragraph 10. (Footnotes omitted, bold emphasis added.)

87.    The Second Circuit's more recent decision in *Giovanniello v. ALM Media*, LLC, 726 F.3d
       107 (2d Cir. 2013), recognized that prior interpretation of §227(b)(3) as giving state courts
       the authority to set the terms of TCPA claims no longer held true.   Based on those
       precedents, the court held that Federal Rule of Civil Procedure 23, not state law, governs
       when a federal TCPA suit may proceed as a class action.   The Second Circuit noted that
       Mims triggered a fundamental shift in the way that the court views Section 227(b)(3)'s "if
       otherwise permitted" language, and "uprooted much of our TCPA jurisprudence."
       Ultimately, the court found that Federal Rule of Civil Procedure 23 now governs TCPA
       class actions in Federal Courts.

88.    Within the months immediately preceding the filing of this lawsuit, Defendant and its agents
       telephoned the Plaintiff's cellular telephone number on numerous occasions in violation of
       the TCPA.

89.    Without Plaintiff's prior express consent, Defendant and its collectors and agents
       repeatedly used an automatic telephone dialing system to call Plaintiff's cellular telephone
       in an attempt to collect this alleged debt, at least twenty-nine (29) times prior to the
       commencement of this litigation.

90.    Oftentimes these phone calls would simply be an automatic message requesting that the
       Plaintiff call the Defendant.

91.    Plaintiff also asked the Defendant numerous times not to call her at his cellular phone
       number.

92.    When the Plaintiff was able to speak to the Defendant's agent, he would request that no
       "robo-calls" be made to his cell phone number.

93.     Despite these requests to not receive "robo-calls" at his cell phone number, neither the "autodialed" calls nor their frequency abated.

94.     The frequency of these calls also greatly impacted the Plaintiff's home and work life as well.

95.     Plaintiff also began to suffer from extreme stress and physical hardship as a result of the frequency of the calls and his inability to deal with the Defendant in any constructive way.

96.     These hardships, caused by the Defendant, directly harmed the Plaintiff's ability to work and earn money, deal with his family, and otherwise lead a healthy and productive life.

97.     Throughout this time the Defendant was on specific notice that the phone was a cell phone and that the Plaintiff was specifically requesting that they not call him at that number, making these automated calls to Plaintiff willful.

98.     All calls and messages were sent in willful violation of the TCPA because Defendant never obtained the Plaintiff's prior express consent, and had no basis to believe that they had the Plaintiff's prior express consent to make automated calls to his cell phone or to send him prerecorded and/or synthesized messages on his cell phone.

### *Summary*

99.     All of the above-described collection communications made to Plaintiff by Defendants and other collection employees employed by Defendant, were an invasion of his privacy by the use of repeated calls.

100.     According to findings by the FCC, automated calls are prohibited because, as Congress found, such calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless

11

customers are charged for incoming calls whether they pay in advance or after the minutes are used.

101. The United States Supreme Court has recognized a citizen's home as "the last citadel of the tired, the weary, and the sick," *Gregory v. Chicago*, 394 U.S. 111, 125 (1969), and has noted that "[p]reserving the sanctity of the home, the one retreat to which men and women can repair to escape from the tribulations of their daily pursuits, is surely an important value." *Carey v. Brown,* 447 U.S. 455, 471(1980).

102. The Defendant's persistent autodialed calls eliminated the Plaintiff's right to be left alone.

103. These persistent autodialed collection calls eliminated the peace and solitude that the Plaintiff would have otherwise had.

104. Defendant's actions constituted the unauthorized use of, and interference with the Plaintiff's cellular telephone service for number which the Plaintiff paid money.

105. Plaintiff was charged money for each call that Defendant made to Plaintiff's cellular phone.

## TCPA AUTODIALERS

106. The TCPA further provides that "[t]he term 'automatic telephone dialing system' means equipment which has the capacity – (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." (47 U.S.C. § 227(a)(1)).

107. The FCC has interpreted an autodialing telephone dialing system as follows:

Under the TCPA, the term "automatic telephone dialing system" or "autodialer" is defined as "equipment which has the capacity – (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." . . . § 227(a)(1). *The Commission has emphasized that this definition covers any equipment that has*

12

*the specified capacity to generate numbers and dial them without human intervention regardless of whether the numbers called are randomly or sequentially generated or come from calling lists.* See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014, 14092, para. 133 (2003) (2003 TCPA Order). The Commission has, for example, concluded that the scope of that definition encompasses "hardware [that], when paired with certain software, *has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers*," in light of, among other things, its conclusion that "the purpose of the requirement that equipment have the 'capacity to store or produce telephone numbers to be called' is to ensure that the prohibition on autodialed calls not be circumvented." Id. at 14091-93, paras. 131, 133.

*Soundbite TCPA Ruling*, 15 FCC Rcd. 15391 at ¶ 2, n.5 (emphasis added.)

**CAUSE OF ACTION**
**FIRST COUNT**
**KNOWING AND/OR WILLFUL VIOLATIONS OF THE TELEPHONE
CONSUMER PROTECTION ACT, 47 U.S.C. § 227 *ET SEQ*.**

108.    Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

109.    The foregoing acts and omissions of Transworld Systems Inc. constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each of the above-cited provisions of 47 U.S.C. § 227 *et seq.*

110.    As a result of Transworld Systems Inc.'s knowing and/or willful violations of 47 U.S.C. § 227 *et seq.*, Plaintiff is entitled to treble damages of up to $1,500 for each and every violation of the statute, pursuant to 47 U.S.C. § 227(b)(3).

111.    Plaintiff is also entitled to and does seek injunctive relief prohibiting such conduct violating the TCPA by Transworld Systems Inc. in the future.

112.    Plaintiff is also entitled to an award of attorneys' fees and costs.

## SECOND COUNT
## VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227 *ET SEQ.*

113.    Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

114.    The foregoing acts and omissions of Transworld Systems Inc. constitute numerous and multiple violations of the TCPA, including but not limited to each of the above cited provisions of 47 U.S.C. § 227 *et seq.*

115.    As a result of Transworld Systems Inc.'s violations of 47 U.S.C. § 227 *et seq.*, Plaintiff is entitled to an award of $500 in statutory damages for each and every violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

116.    Plaintiff is also entitled to and does seek injunctive relief prohibiting Transworld Systems Inc.'s violations of the TCPA in the future.

117.    Plaintiff is also entitled to an award of attorneys' fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, pursuant to the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 (b)(1)(a), respectfully requests that the Court:

1.  Award statutory damages of $500.00 for each and every violation of the TCPA by the Defendant;

2.  Find that the Defendant willfully or knowingly violated the TCPA and increase the statutory damages against the Defendant to $1,500.00 for each and every violation of the TCPA;

3. Enter a judgment in favor of the Plaintiff against Defendant for an amount of damages to be proved at trial;

4. Enjoin the Defendant from further contacting the Plaintiff in violation of the TCPA;

5. Award Plaintiff the costs of bringing this action, as well as such other and additional relief as the Court may determine to be just and proper.

Dated: May 15, 2017

Respectfully submitted,

__s/Subhan Tariq, Esq._____
Subhan Tariq, Esq.
Attorney I.D. No. ST9597
The Tariq Law Firm, PLLC
9052 171st Street
Jamaica Estates, NY 11432
Telephone: (516) 900-4529
Facsimile: (516) 453-0490
Email: subhan@tariqlaw.com
**Attorney for Plaintiff**

To:

    Transworld Systems Inc.
    2235 Mercury Way, Suite 275
    Santa Rosa, CA 95407-5413

    (via Prescribed service)

    Clerk of the Court,
    United States District Court
    Eastern District of New York
    225 Cadman Plaza East
    Brooklyn, NY 11201

    (For Filing purposes)